UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM REESE,
    Plaintiff,

v.

                                    Case No. 08-10261

MICHIGAN DEPARTMENT OF
CORRECTIONS and GERALD BROWN,    Honorable Patrick J. Duggan
    Defendants.
                                        /

**OPINION AND ORDER**
At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 24, 2009.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                          U.S. DISTRICT COURT JUDGE

In this lawsuit William Reese ("Plaintiff") alleges that the Michigan Department of Corrections ("MDOC") and Gerald Brown, the Assistant Deputy Warden at Camp White Lake correctional facility, made discriminatory employment decisions against him on the basis of gender. Specifically, this lawsuit arises from the MDOC's refusal to assign male corrections officers to the third shift and public works positions at Camp White Lake, an all-female correctional facility. Presently before the Court is Defendants' Motion for Partial Summary Judgment, filed on January 15, 2009.[1] The motion has been fully briefed and the Court held a hearing on March 19, 2009. For the reasons set forth below, the Court denies

---

[1]Plaintiff's complaint alleges four separate counts: the first three against the MDOC and the fourth against Gerald Brown. Defendants' motion for "partial" summary judgement seeks summary judgment on counts one and four. Since the filing of the motion, however, the parties stipulated to the dismissal of counts two, three, and four. Consequently, count one against the MDOC is the only remaining count.

the motion.

**I. Factual and Procedural Background**

Plaintiff has worked for the MDOC since 1987. On March 26, 2007, the MDOC opened Camp White Lake as a new, all-female correctional facility and Plaintiff was transferred to that location. At Camp White Lake, Plaintiff expressed an interest in working the third shift and in filling the "Public Works" position. In general terms the public works position involves the transportation and supervision of prisoner work crews that perform work at off-site locations. Plaintiff was informed, however, that the third shift and public works positions at Camp White Lake are restricted to female officers.[2] Because of the manner in which schedules were created at Camp White Lake, the MDOC's policy of limiting the third shift to females prevented Plaintiff from working overtime.

Plaintiff filed an internal complaint regarding the denial of his work requests on May 3, 2007, alleging that the MDOC was discriminating against him on the basis of his gender. On June 13, 2007, Plaintiff filed similar complaints with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission ("EEOC"). On June 15, 2007, the MDOC policy was revised to allow males to work in the control center on the third shift at Camp White Lake. Plaintiff was the first male to work the third shift that night. On December 5, 2007, Plaintiff received a "right to sue" letter from the EEOC and he filed this lawsuit on January 17, 2008.

---

[2]The Michigan Department of Civil Service approved MDOC requests to classify the positions at issue as female-only on grounds that such a requirement is a bona fide occupational qualification ("BFOQ") for these positions.

2

Plaintiff's complaint contains four counts against the MDOC and Gerald Brown: count one alleges a gender discrimination claim against the MDOC under Title VII of the Civil Rights Act of 1964; counts two and three allege retaliation and gender discrimination against the MDOC under Michigan law; and count four alleges gender discrimination against Gerald Brown under Michigan law. In response to these claims, the MDOC maintains that gender is a bona fide occupational qualification ("BFOQ") for the positions at issue in this case. The MDOC and Brown filed the present motion on January 15, 2009, requesting summary judgment on counts one and four. On January 29, 2009, the parties stipulated to dismissal of the state law claims–counts two, three, and four. Consequently, there are no remaining claims against Gerald Brown and the request for summary judgment as to count four is moot. The Court now considers the MDOC's motion for summary judgment as to count one.

## II. Standard of Review

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material

3

fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

### III. Gender Discrimination and the BFOQ Defense

"Title VII of the Civil Rights Act of 1964 broadly proscribes gender-based discrimination in the workplace." *Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 747 (6th Cir. 2004); *see also* 42 U.S.C. § 2000e-2(a). Nonetheless, an employer may make decisions on the basis of gender when gender presents a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e-2(e). The exception for BFOQs "is written narrowly, and is to be read narrowly." *Everson*, 391 F.3d at 748. When asserted, the employer bears the burden of proof in establishing a BFOQ. *Id.*

In this case, the MDOC admits that Plaintiff was denied the opportunity to work on the third shift at Camp White Lake from March 26, 2007, until June 15, 2007, and that he was denied, and continues to be denied, the opportunity to fill the public works position because

4

of his gender. The MDOC maintains that being female is a BFOQ for those positions and that the modification to the third shift policy was only made feasible after the implementation of strict rules for the male officers and female prisoners at Camp White Lake.

This is not the first time the MDOC has been sued for its practice of restricting positions to female officers. In *Everson v. Michigan Department of Corrections*, the Sixth Circuit agreed with the MDOC that gender is a BFOQ for certain positions in Michigan's all-female correctional facilities. 391 F.3d 737. There the Sixth Circuit held that "the decisions of prison administrators are entitled to a degree of deference" in the employment context "[b]ecause of the unusual responsibilities entrusted to them, the redoubtable challenges they face, and the unique resources they possess . . . ."[3] *Id.* at 750. The court went on to explain that a prison administrator's decision may not deserve deference if it is made "capriciously," but that, otherwise, "[t]he MDOC [is] not obligated to follow any particular protocols in order to earn deference . . . ." *Id.* at 751.

Applying those concepts to the facts before it, the Sixth Circuit concluded that the MDOC had appropriately classified approximately 250 positions in its all-female correctional facilities as female-only. *Id.* at 741. In support of its opinion, the court discussed the MDOC's obligation to promote security and safety within the correctional facilities and its legitimate interest in ensuring some degree of privacy for the female prisoners. *See id.* at 753-59. Of special concern to the court was an "endemic problem of sexual abuse" documented in the all-female correctional facilities and the MDOC's need to resolve that

---

[3]The court later described the appropriate "degree of deference" as "substantial weight." *Everson*, 391 F.3d at 755.

problem. *See id.* at 741-45, 753-60. Ultimately, the court concluded that, "given the endemic problem of sexual abuse in Michigan's female facilities, given the constellation of issues addressed by the MDOC's plan (security, safety, and privacy), and given the deference accorded the MDOC's judgment, the MDOC's plan is reasonably necessary to the normal operation of its female prisons." *Id.* at 761.

In support of its BFOQ defense in this case, the MDOC primarily relies on *Everson* and maintains that the third shift and public works positions at issue here fall within the types of positions discussed in *Everson*. Plaintiff, meanwhile, disputes the MDOC's description of the actual job duties for third shift control center and public works officers and asserts that male officers have always been allowed to fill analogous positions at other all-female facilities. Plaintiff also argues that *Everson* does not apply to this case because, at the conclusion of its opinion, the Sixth Circuit warned of the "limited nature" of the holding; the court explained, "We do not hold that gender constitutes a BFOQ for corrections officers in female prisons outside of Michigan. Nor do we hold that gender constitutes a BFOQ for positions in Michigan's female prisons beyond the approximately 250 positions we have discussed." *Id.* at 761.[4]

---

[4]Plaintiff makes additional arguments that the MDOC's decision in this case is not entitled to deference and that the Court should follow a Seventh Circuit case, *Henry v. Milwaukee County*, 539 F.3d 573 (7th Cir. 2008), over *Everson*.
    As to the first argument, Plaintiff sets forth no evidence suggesting that the MDOC's employment decisions in this case were "capricious" and the Sixth Circuit made it clear that prison administrators need not earn deference for their decisions by following any specified procedures. *Everson*, 391 F.3d at 751-52.
    As to the second argument, the juvenile detention center at issue in *Henry* presented different issues than the all-female correctional facilities run by the MDOC. *Henry*, 539 F.3d at 582. As the Seventh Circuit noted, the juvenile detention center in *Henry* had no history of sexual abuse problems and the prison administrators were applying their same-sex employment

Based on the record facts, the Court cannot determine whether the third shift and public works positions at issue in this case fall within the type of positions analyzed in *Everson*. While the *Everson* opinion expressly involved housing unit positions, transportation officers, and intake offers, the positions discussed in *Everson* were identified more by their duties than by their shift or title. All of the positions affected by the female-only restrictions in *Everson* placed officers in a position to interact with the female prisoners in situations where the prisoners would be most vulnerable to sexual abuse. Specifically, each of the positions required officers to interact with or observe prisoners in various states of undress. *See id.* at 740. Furthermore, there does not appear to have been any dispute between the parties in *Everson* that the positions at issue involved these higher risk scenarios.

In this case, Plaintiff takes issue with the MDOC's characterization of the third shift control center and public works positions as being analogous to the positions discussed in *Everson*. The MDOC maintains that it was necessary to restrict all third shift positions at Camp White Lake to female officers until the prisoners could be given notice they would be observed by a male guard in the control center if they left their sleeping quarters and walked to the restroom facilities. MDOC officials allegedly feared that, until the prisoners were given notice of the presence of a male officer, they would leave their sleeping quarters in a state of undress. At the same time, however, Plaintiff and MDOC officials have testified

---

policy in a manner inconsistent with the privacy interests of the juveniles. *Id.* Furthermore, the primary justification for the same-sex policy in *Henry* was rehabilitation rather than concerns with safety, security, and privacy. *Id.* at 583. Given these facts, the Court concludes that *Everson*, which considered similar MDOC operated all-female prisons, provides the most relevant guidance for this case.

7

that, from the opening of Camp White Lake, rules required that prisoners be fully dressed when leaving their sleeping quarters. Under these circumstances, Plaintiff argues that the third shift gender restrictions were never reasonably necessary.

In regard to the public works position, there remains a dispute as to the actual duties of those officers. The MDOC maintains that public works officers are required to perform pat-down searches of the prisoners on the work crew before returning to the prison. The "position description" for public works officers also reflects this requirement. Because of the pat-down requirement, an MDOC official testified that gender restrictions for this position began to be implemented after the *Everson* decision in 2005. Nonetheless, Plaintiff testified that he filled the public works position at another all-female prison until the time of his transfer in March 2007. Plaintiff further testified that, in the approximately seven years that he worked as a public works officer with all-female work crews, he was never required nor had occasion to perform pat-downs on the prisoners.

In the face of Plaintiff's claims and testimony, the MDOC argues that *Everson* requires the Court to defer to its position. The Court agrees that *Everson* requires the Court to defer to the MDOC's professional judgment that gender restrictive employment policies are necessary where undertaken to combat established problems with sexual abuse. If, for example, the public works position actually requires regular pat-down searches of the work crew members, the Court must defer to the MDOC's decision to restrict the position to female officers. The factual circumstances surrounding the positions at issue, however, are not judgments to which the Court must defer. Given the factual disputes regarding whether the third shift control center and public works positions actually involve scenarios with a

8

high risk for sexual abuse, the Court cannot conclude that the MDOC is entitled to summary judgment in this case.

Finally, the Court notes that the BFOQ defense generally requires a "case-by-case" analysis and that *Everson* itself was decided only after a full bench trial. *See id.* at 746, 760. The Sixth Circuit clearly did not intend *Everson* to act as a blanket future authorization for the MDOC to proscribe males from filling positions at its female prisons. Until the factual issues regarding the precise circumstances and responsibilities of the positions at issue are resolved, the Court cannot determine whether the female-only restrictions are "reasonably necessary" for the MDOC to address the issues of security, safety, and privacy in its all-female correctional facilities.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment is **DENIED**.

                                    s/PATRICK J. DUGGAN
                                    UNITED STATES DISTRICT JUDGE

Copies to:
Robert Kent-Bryant, Esq.
Steven M. Cabadas, Esq.